# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 13-700V
(not to be published)

* * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| ZELMA TAYLOR, | |
| | Special Master Corcoran |
| Petitioner, | |
| | Filed: October 30, 2018 |
| v. | |
| | Attorney's Fees and Costs. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Mark T. Sadaka*, Mark T. Sadaka, LLC, Englewood, NJ, for Petitioner.

*Jennifer L. Reynaud*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION GRANTING FINAL AWARD OF ATTORNEYS' FEES AND COSTS[1]

On September 19, 2013, Zelma Taylor ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that the influenza ("flu") vaccine she received on September 29, 2010, caused her to experience acute disseminated encephalomyelitis ("ADEM"). Petition at 1, 5. An entitlement hearing was held in this matter on April 17, 2017, and May 25-26, 2017, and I issued my Decision denying entitlement on March 9, 2018. *Taylor v. Sec'y of Health & Human Servs.*, No. 13-700V, 2018 WL 2050857 (Fed. Cl. Spec. Mstr. Mar. 9, 2018). That Decision was not appealed.

---

[1] Although I have not designated this Decision for posting on the United States Court of Federal Claims' website, it will be available to anyone with access to the internet in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. It will otherwise be posted in its current form.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act").

Petitioner has now filed a motion requesting final attorneys' fees and costs, dated September 11, 2018 (ECF No. 93) ("Fees App."), requesting reimbursement in the total amount of $129,591.75 (representing $86,092.58 in attorney's fees, plus $43,499.17 in costs). Fees App. at 2. Counsel also warrants that pursuant to General Order No. 9, Petitioner has not incurred any additional fees or costs related to the litigation of this case. ECF No. 92. Respondent reacted to the motion on September 25, 2018, indicating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, and deferring to my discretion to determine the amount to be awarded. Response, ECF No. 94, at 2-3. Petitioner's Reply was filed on September 28, 2018, reiterating that she believed the requested amount of fees and costs was reasonable. Reply, ECF No. 95, at 1.

For the reasons set forth below, I hereby **GRANT** Petitioners' motion, awarding final attorney's fees and costs in the amount of **$126,737.04**.

## ANALYSIS

### I. A Final Award of Fees and Costs is Appropriate

I have in prior decisions set forth at length the criteria to be applied when determining if fees should be awarded for an unsuccessful claim. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances." The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Although Petitioner was not successful in pursuing her claim, I find that the matter had sufficient reasonable basis to justify a final award of fees. I do not doubt that Ms. Taylor brought their claim in a good-faith belief that her vaccination played a causal role in her injury. Additionally, the claim possessed sufficient objective support to meet the second half of the reasonable basis test, given the reasonableness of the dispute surrounding the nature and onset of

Petitioner's unquestionably severe injuries. Accordingly, a final award of attorneys' fees and costs is proper.

## II. Calculating Amount of Final Award

I must now evaluate what amount of award is proper. In any Vaccine Program case in which fees are sought, the requested sum must be "reasonable." Section 15(e)(1). Special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended[3] on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

Petitioner requests the following rates of compensation for her attorneys: for Mr. Mark Sadaka, $337.05 per hour for work performed in 2012 and 2013, $350.00 per hour for work performed in 2014 and 2015, $362.95 per hour for work performed in 2016, $376.38 per hour for work performed in 2017, and $396.00 per hour for work performed in 2018; for Ms. Anna

---

[3] An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008); *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C., for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 (1983).

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate used for the lodestar calculation. *Avera*, 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). This "Davis" exception is inapplicable here, however, because I have previously found the attorneys in question should receive forum rates.

Sweeney, $192.60 per hour for work performed in 2013, $200.00 per hour for work performed in 2014, and $207.40 per hour for work performed in 2015; and for Mr. Andrew Pinon, $215.07 per hour for work performed in 2016. Fees App. Ex. A at 37. Petitioner also requests that paralegals be compensated for work performed from 2012-2018 at rates varying from $129.19 per hour to $150.55 per hour, based on the year and the individual paralegal. *Id.* at 37-38.

The attorneys practicing at the law firm of Mark Sadaka, located in Englewood, New Jersey, have repeatedly been found to be "in-forum" and therefore entitled to the forum rates established in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) and subsequently adopted by the Office of Special Masters. I have previously found all of the rates requested in the instant matter reasonable, and other special masters have as well. *See Rolshoven v. Sec'y of Health & Human Servs.*, No. 14-439V, 2018 WL 3986831, at *2 (Fed. Cl. Spec. Mstr. June 26, 2018); *Arshakyan v. Sec'y of Health & Human Servs.*, No. 15-1004V, 2018 WL 5284592 (Fed. Cl. Spec. Mstr. Sept. 27, 2018); *Hood v. Sec'y of Health & Human Servs.*, No. 17-1642V, 2018 WL 4042195 (Fed. Cl. Spec. Mstr. July 30, 2018). Accordingly, no adjustment to the requested rates is necessary.

The overall hours spent on this matter (298.3) also appear to be mostly reasonable. Although the Petition was filed on September 19, 2013, the billing records indicate that work on this matter began as early as November 27, 2012. Additionally, the entitlement hearing was bifurcated into two different sessions, beginning on April 17, 2017, and concluding on May 25-26 2017, with both hearings held in Washington, DC, and necessitating travel. Additionally, the parties engaged in post-hearing briefing. Thus, the large number of hours appears to be commensurate with the work required for this case.

The only reductions I find necessary are for travel time. On three occasions, Mr. Sadaka billed travel time at his full hourly rate (entries on 4/16/17, 4/17/17, and 5/26/17). Fees App. Ex. A at 31-32. "When case-related work is performed during travel, the time sheets should reflect the work performed and the hours spent performing it." *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *7 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (quoting *Gruber ex rel. Gruber* v. *Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 788 (2010)). And "[a]bsent documentation of the work performed by an attorney while he or she was traveling, the attorney will not be compensated at his or her full hourly rate for travel time." *Id.* Instead, those travel hours will be compensated "at one-half the standard hourly rate." *Id.*

Here, the billing records do not indicate that Mr. Sadaka was engaged in case work while traveling. Indeed, the days on which Mr. Sadaka traveled to Washington, DC have separate billing entries for "prepare for hearing" which would seem to indicate that Mr. Sadaka has accounted for his case work separate from his travel for those days. Accordingly, I will only compensate Mr.

4

Sadaka at half of his standard rate for the time spent traveling. This results in a total reduction of **$1,693.71**.[4] Thus, Petitioner is awarded **$84,398.87** in attorneys' fees.

I will next turn to costs. Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (Fed. Cl. 2002). Petitioner requests total costs in the amount of $43,499.17. Fees App. Ex. A at 40. This includes the cost of two experts, Drs. Nizar Souayah and Lawrence Steinman; lodging and travel to and from Washington, DC for the entitlement hearing (on two separate occasions); and for medical records and mailing expenses.

Petitioner requests total compensation for Dr. Souayah in the amount of $13,000. Fees App. Ex. B at 70. Dr. Souyah performed 26 hours of work in preparing his expert report at a rate of $500.00 per hour. *Id.* Dr. Souayah's requested rate has previously been found reasonable. *Gowans v. Sec'y of Health & Human Servs.*, No. , 2017 WL 1842824, at *5 (Fed. Cl. Spec. Mstr. Apr. 12, 2017). Additionally, upon review of his submitted billing invoice, I find the hours expended on this matter to be reasonable, although he did not testify at hearing. Accordingly, the cost of $13,000.00 (broken down into a charge of $1,500.00 for the retainer fee and $11,500.00 for the balance in the billing records) is reasonable and shall be awarded in full.

Petitioner also requests total compensation for Dr. Steinman in the total amount of $22,894.00 (of which $2,000.00 was billed as a retainer fee). Fees App. Ex. B at 25-26. Dr. Steinman billed a total of 42.5 hours at $500.00 per hour for his work on this case. This amount also includes Dr. Steinman's travel expenses to give his testimony at the entitlement hearing in Washington, DC, on April 17, 2017. I have found that $500.00 per hour is a reasonable amount at which to compensate Dr. Steinman for his Vaccine Program work, and thus will not adjust the requested rate here. *D'Tiole v. Sec'y of Health & Human Servs.*, No. 15-85V, 2017 WL 5379195, at *4 (Fed. Cl. Spec. Mstr. Sep. 19, 2017).

I also find the total number of hours billed by Dr. Steinman to be reasonable, given that Dr. Steinman reviewed a substantial number of medical records, prepared an expert report, and prepared for and gave expert testimony at the entitlement hearing on April 17, 2017. Fees App. Ex. B at 25. The only reduction I find necessary is for Dr. Steinman's travel, which was billed at

---

[4] Additionally, I note that some of Mr. Sadaka's longer billing entries occasionally veer into what is typically considered block billing. For example, one entry on April 14, 2017, billed for 5.40 hours, reads "Review of file to prep for expert review sessions; review of respondent's prehearing submissions; revise direct exam memo to file." Fees App. Ex. A at 30. Similar examples occur on January 12, 2017, and 7/25/17. *Id.* at 30, 33. While I will not reduce the fees award at this time because the overall time appears reasonable, I note that block billing is not permitted in the Vaccine Program, and future occurrences may result in a reduction to overall fees awarded.

$1,345.00. Dr. Steinman indicated in his invoice that the only documentation he was able to provide to support the cost was a copy of the billing statement for the credit card he used to purchase the ticket. This cost, in my experience, is high even for a cross-country flight like the one Dr. Steinman made from California to Washington, DC and back, and therefore it is possible that Dr. Steinman purchased a first class or otherwise upgraded ticket. However, the Court has previously warned petitioners that upgraded methods of travel, such as first class airfare or business class/Acela train fare is not compensable in the Vaccine Program. *See Sharpe v. Sec'y of Health & Human Servs.*, No. 14-65V, 2018 WL 3990867, at *3 (Fed. Cl. Spec. Mstr. July 6, 2018); *Reichert v. Sec'y of Health & Human Servs.*, No. 16-697V, 2018 WL 3989429, at *4 (Fed. Cl. Spec. Mstr. June 20, 2018); *Tetlock v. Sec'y of Health & Human Servs.*, No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017). Because this cost lacks overall appropriate documentation, I must reduce it from the total award of costs. Dr. Steinman's submitted documentation indicates that he booked a round-trip ticket on United Airlines from Los Angeles International Airport to Dulles International Airport. While noting that airfare pricing is somewhat nebulous and depends at least partially on the days traveled and the proximity of the booking date to the travel date, it appears that round-trip airfare similar to what Dr. Steinman purchased can typically be purchased for approximately $600.00[5] – therefore, that is the amount I shall award for his travel. Accordingly, Petitioner's requested costs will be reduced by **$745.00**.[6]

The remainder of the costs appear to be reasonable with one exception. The submitted documentation indicates that to travel to and from both entitlement hearings in Washington, DC, Mr. Sadaka utilized the Acela Express train – a form of transportation not permissible as noted above. *See Sharpe*, 2018 WL 3990867, at *3; *Tetlock*, 2017 WL 5664257, at *6. The billing records indicate that Mr. Sadaka incurred total costs of $772.00 for Acela service. I will therefore reduce the amount awarded to reflect that of typical coach-class Amtrak ticket – the record indicates that Mr, Sadaka left from the Metropark, New Jersey station and arrived at Union Station in Washington, DC, and my research indicates that a coach seat can be purchased readily for $89.00 each way.[7] I will therefore reduce the award of costs by **$416.00**.[8]

The remainder of the costs have been supported by adequate documentation, and shall be awarded in full. Thus, Petitioner shall be awarded attorneys' costs in the amount of **$42,338.17**.

---

[5] Roundtrip airfare from LAX to IAD airports, UNITED AIRLINES, https://www.united.com/en/us/ (inputting airports and days of the week identical to the days traveled by Dr. Steinman and reviewing results).

[6] $1,345.00 - $600.00 = $745.00.

[7] Train fare from Metropark, NJ to Washington, DC, AMTRAK, https://www.amtrak.com/home html (inputting destinations and days of the week identical to the days traveled by Mr. Sadaka and reviewing results).

[8] $772.00 – ($89.00 * 4) = $416.00.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$126,737.04** (representing $84,398.87 in attorneys' fees and $42,338.17 in costs) as a lump sum in the form of a check jointly payable to Petitioner and her counsel, Mr. Mark Sadaka, Esq. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this decision.[9]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.